No. 33,676

THE STATE OF KANSAS, ex rel., *Appellee*, v. BANK SAVINGS LIFE INSURANCE COMPANY (*Defendant*) and E. H. LUPTON, JR., Claimant, *Appellant*.

(75 P. 2d 297)

Opinion filed January 29, 1938.

*J. J. Schenck, Clyde P. Schenck, E. R. Sloan, W. Glenn Hamilton, F. A. Sloan, Eldon R. Sloan,* all of Topeka, and *L. H. Ruppenthal,* of McPherson, for the appellant.

*Ralph T. O'Neil, John D. M. Hamilton, Barton E. Griffith* and *Peter F. Caldwell,* all of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action wherein a receiver was appointed for the Bank Savings Life Insurance Company. E. H. Lupton filed a claim against the receiver. This claim was denied by the trial court. Claimant appeals.

The receiver was appointed October 9, 1935. During the time that the company had been in operation claimant had been connected with it in some capacity or another. The company had issued two life insurance policies to him. One of them had a disability clause which provided, among other things, that upon the insured becoming totally and permanently disabled the company would waive the premium and pay him $250 a month as long as he should live. At the time when the receiver was appointed several controversies had arisen between the company and claimant. These controversies involved the title to considerable real estate in western Kansas, a judgment which the company had against claimant in the district court of Douglas county over the premiums due on the policies heretofore mentioned, and an action pending in Shawnee county brought by the company against the claimant in which judgment for $100,000 was° asked.

Immediately after the receiver took charge it was deemed desirable that all the controversies should be settled between Mr. Lupton and the company. After some conferences a contract was executed by Lupton and the receiver. This contract was prepared by the receiver. It provided for a settlement of all these disputed matters. Among other provisions was the following:

". . . second party agrees:

"a. That both policies of insurance, Nos. 17,331 and 17,332, shall be in full force and effect with all privileges thereunder subject to the payment of premiums except where waived by actual disability and that any disability payments accruing in the future shall be paid according to the terms of the policy."

This agreement was executed by Lupton and his wife and by the receiver on February 8, 1936. It was approved by the trial court. On February 25, 1936, the receiver entered into a reinsurance contract with the Victory Life Insurance Company whereby the receiver sold to the Victory a part of the assets of the Bank Savings Life Insurance Company, and as a part consideration for these assets the Victory assumed and agreed to pay valid claims for disability benefits arising prior to February 25, 1936, providing for the payment of monthly benefits to the insured. This contract, however, provided that twenty-five percent of the amount provided for in any policy should be excepted from this assumption, and that the amounts provided for in the policies should be paid less that twenty-five percent. The above provision is what is known as the policy lien. This contract was approved by the trial court. The Victory Life Insurance Company offered to pay Lupton seventy-five percent of what was due under one of his policies. This offer was not accepted. He demanded 100 percent of what was provided for in the policies. This was refused by the company. This claim followed.

The claim recited facts as they have been detailed here, and in addition that Lupton and wife had fully complied with the contract between them and the receiver, and that he was totally and permanently disabled on the date when that contract was made. The claim applied the life expectancy of Lupton to twenty-five percent of $250 a month and asked that claimant recover from the receiver $6,750 and costs.

The answer of the receiver was first a general denial. It then set out that by order of court and prior to the filing of the claim the receiver had transferred all the assets of the Bank Savings Company to the Victory; that as a part of negotiations for the contract between the receiver and Lupton they discussed the matter of a lien on policies to be incorporated in the reinsurance contract; that the receiver told Lupton there would be such a lien, the amount of which he did not know at the time; that no mention was made of the lien in the written contract because the amount of it was undetermined at the time.

The answer further alleged that the reinsurance contract which has been referred to heretofore expressly included all contracts of the Bank Savings Life Insurance Company; that claimant had never raised any objection to the reinsurance contract and had never appealed from the order of the trial court approving the contract, although a copy of it was sent him and although the receiver orally advised claimant of the amount of the lien a few days after the contract was entered into. The answer further alleged that the reinsurance contract provided that each policyholder should be deemed to have assented to the reinsurance contract who failed to deposit in the mail a letter addressed to the receiver within 30 days of the date of the mailing of the receiver's letter, containing a notice of his dissent from the contract; that a copy of the reinsurance contract was mailed to claimant on March 14, 1936, and claimant had never filed with the receiver a letter stating that he dissented to the reinsurance agreement, and claimant was, therefore, bound by the terms of the agreement. The answer further alleged that a paragraph of the reinsurance agreement provided that no holder of any policy issued or assumed by the Bank Savings Life Insurance Company who should have assented to the provisions of the reinsurance contract should have any rights not accorded by that contract; that claimant had assented to payment of seventy-five percent of his disability claims of the Victory Life Insurance Company and no longer had any right not accorded by that agreement. The answer further alleged that the receiver had transferred all the assets of the Bank Savings Life Insurance Company to the Victory Life Insurance Company pursuant to order of the trial court; that claimant had never objected to these orders or appealed from them and the receiver had no funds with which to pay the claim should it be allowed by the trial court. The prayer of the answer was that the claim be denied.

The Victory Life Insurance Company filed a separate answer making about the same allegations as to the appointment of a receiver, the reinsurance contract, the approval of the court and the failure of claimant to object to the reinsurance contract. The company stated in the answer that it was willing to continue to pay claimant seventy-five percent of the amount due under his policy. This answer prayed that the claim be dismissed. With these pleadings the trial court heard the claim and found for the receiver and the Victory Life Insurance Company and against claimant. This appeal is from that judgment.

When the case came on to be heard parties admitted the facts about as they have been detailed here, especially that claimant had the policy in question; that he was totally and permanently disabled; that the contract between the receiver and Lupton and wife had been made and that Lupton and wife had complied with all the provisions of the contract as they had agreed. With this the claimant rested. .

The receiver then took the stand. He was permitted to testify as to the controversies between claimant and the company at the time he was appointed and as to conversations had by him with claimant about these controversies prior to the time when the contract was entered into by the receiver and claimant. He was permitted to testify that at the time when these conversations took place claimant asked him what the lien would be on these policies and he told claimant he did not know what it would be and that he notified him of what the lien was after it was fixed by the court. The claimant objected to the introduction of this evidence on the ground that it was an attempt to vary the terms of a written contract. The trial court overruled this objection. Claimant urges that this ruling was error. Throughout the balance of the hearing on the claim the receiver was permitted to give similar testimony each time over the objection of claimant.

The receiver points out that the agreement between the receiver and Lupton was silent as to a lien and that they both knew there must be a lien. He argues that the disputed testimony was admitted not to change the terms of the written contract, but to prove an agreement of the parties on a matter not covered by the contract.

In order to answer this argument it will be necessary to examine the contract and the circumstances surrounding the parties at the time of its execution, as shown by this record. The dispute between the company and the Luptons has already been noted in this opinion. It will be noted that in the written contract the receiver agreed that "any disability payments accruing in the future should be paid according to the terms of the policy." It would be difficult to find language more unambiguous. Since both parties knew about the certainty of a lien being placed on the policy it would have been natural for them to have agreed in the written contract that the benefits should be paid according to the terms of the policy "less any lien" or "subject to the reinsurance contract." This was not done, however. The receiver argues that all the contract pro-

vided was that the policies should be in full force and effect. It is true that the clause did provide for that, but it went ahead and provided for disability payments according to the terms of the policy. It must be remembered that this was not a contract between the company and the Luptons. It was between the receiver and Lupton. Under such circumstances we are led to the conclusion that the effect of the evidence of the receiver was to vary the terms of the written contract.

The case is one for the application of the rule laid down in *Hudson v. Riley,* 104 Kan. 534, 180 Pac. 198. There this court said:

"Where parties, after negotiations, commit their agreements to an unambiguous writing, it is to be presumed that every stipulation and material matter have been included in the .writing, and parol evidence of the preceding conversations or negotiations in conflict with the written contract are not admissible in evidence." (Syl. ¶ 3.)

It is clear that in this case the receiver and Lupton, after negotiations, committed the agreement to writing. We find nothing ambiguous about it. (See, also, *Brown v. Pryor,* 133 Kan. 129, 298 Pac. 747.) We conclude, therefore, that it was error for the trial court to permit the receiver to testify as to conversations with Lupton about the lien to be put on the policy.

The receiver next argues that Lupton is estopped from objecting to the evidence because he himself testified about conversations with the receiver about the lien. This argument is not good in this case. The testimony of Lupton was by deposition. The testimony he gave about such conversation was to meet the allegations in the answer of the receiver. Of course, he could not be compelled to take his chances on the court's making the correct ruling on the admission of evidence to sustain these allegations. He met this issue as best he could when he made his deposition.

The receiver next argues that the contract between the receiver and Lupton is binding unless it was subsequently modified by the reinsurance agreement. The argument is that it was so modified and that to hold in accordance with the views of Lupton would be to prefer one policyholder over another. This argument is not good, for the reason, as we have seen, that there were special considerations which prompted the receiver to enter into the contract in question. The contract was approved by the court. It does not appear that this contract made any difference to the reinsuring company when it bid for the assets, and this company no doubt knew

about the contract before the contract of reinsurance was drawn and consummated.

The receiver next argues that irrespective of the contract between Lupton and him, Mr. Lupton was bound by the reinsurance contract, which provided for a twenty-five percent lien.

The argument is that Lupton knew about the reinsurance contract and its provision for a lien and did not object to it or take steps to advise the receiver that he dissented from it, as provided by its terms.

The trouble with that argument is that according to the plain terms of the contract Lupton had a right to expect the disability payments to be made according to the terms of the policy. The reinsurance contract was approved by the trial court, but so was the contract between the receiver and Lupton. The contract in question was not the contract of the Bank Savings Life. It was the contract of the receiver. The Victory entered into the reinsurance contract with full knowledge of the contract between the receiver and Lupton.

The rule is stated in 23 R. C. L., p. 76, § 82, as follows:

"A receiver, as soon as he is appointed and qualifies, comes, as we have said, under the sole direction of the court. The contracts he makes or the engagements into which he enters, from time to time, under the order of the court, are, in a substantial sense, the contracts and engagements of the court . . ."

In *State Bank v. Domestic, &c., Co.*, 99 Va. 411, 39 S. E. 141, it was said:

" 'The contracts of a receiver made with express or implied authority cannot be annulled at the pleasure of the court.' " (p. 417.)

See, also, *Mudge v. Hughes*, 212 S. W. 819; also, *McAnally v. Glidden*, 30 Ind. App. 22, 65 N. E. 291; also, *Farmers' Loan & Trust Co. v. Burlington & S. W. Ry. Co.*, 32 Fed. 805.

It is clear that the contract between the receiver and Lupton was a valid enforceable contract entered into by the receiver and approved by the trial court. The trial court had authority to approve such a contract, but having approved it, did not have authority to approve another contract between the receiver and another party, the effect of which would be to change or modify the contract first approved. To so hold would make it impossible to make a contract with a receiver and expect the contract to be performed.

The receiver next argues that if Lupton dissented from the reinsurance contract then he is not reinsured by the Victory, and if

he assented he is bound by its terms. This argument is not good, for the reason that it was not necessary for Lupton to dissent from the terms of the reinsurance contract in order to receive the benefits of the contract between the receiver and himself.

It will be noted that claimant asked to be awarded twenty-five percent of $250 a month for his life expectancy, or, in the aggregate, $6,750.

We hold that he is not entitled to be awarded any such lump sum, but his claim should be allowed in the amount of twenty-five percent of $250 per month, payments to be made each month for the rest of his life or as long as he remains totally disabled.

The judgment of the trial court is reversed with directions to enter judgment in accordance with the views herein expressed.

HUTCHISON, J., not sitting.