No. 27,833.

CLAUDE M. CAVE, *Appellant*, v. A. W. HENLEY, *Appellee*.

(264 Pac. 25.)

SYLLABUS BY THE COURT.

1. INJUNCTIONS — *Mandatory Injunctions—When Remedy Will Be Granted*. "A mandatory injunction is rarely granted. The case must be an extreme one to authorize its issue. It is universally restricted to cases where a court of law cannot grant adequate relief, or where full compensation cannot be made in damages." (*A. T. & S. F. Rld. Co. v. Long*, 46 Kan. 701, 702, 27 Pac. 182.)

2. SAME—*Mandatory Injunctions—When Construction Has Been Completed*. In a suit for a mandatory injunction to compel the removal of certain slight encroachments on neighboring property caused by the seepage and hardening of liquid cement used in the construction of a basement wall on the lot lines between plaintiff's residence property and defendant's business property under construction, and also to compel the removal of a small part of a wall of the superstructure which encroached on plaintiff for seven-eighths of an inch, where the issuance of such mandatory injunction would cause a heavy loss to the defendant and the damage sustained by plaintiff on account of the encroachment was relatively small, and where the plaintiff can be adequately compensated in the action at law now pending between plaintiff and defendant over these identical encroachments, the mandatory injunction was properly denied.

Appeal from Haskell district court; GEORGE L. LIGHT, judge. Opinion filed February 11, 1928. Affirmed.

*C. G. Dennis*, of Sublette, *Edgar Foster* and *Horace J. Foster*, both of Garden City, for the appellant.

*C. E. Vance, Clifford R. Hope* and *A. M. Fleming*, all of Garden City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This action arose out of an alleged encroachment by the defendant in the construction of a business building on his town lot adjacent to the residence town lots of plaintiff in the city of Sublette.

The plaintiff owns lots 4 and 5 in the original townsite of Sublette. The lots face the east, and situated thereon are plaintiff's residence and improvements of the value of $12,000. Defendant owns lot 3,

Adjoining Landowners, 1 C. J. p. 1209 n. 67. Injunctions, 32 C. J. pp. 23 n. 33, 147 n. 91; 14 R. C. L. 360.

Cave v. Henley.

lying immediately north of plaintiff's property. Until shortly before this lawsuit arose, the properties were separated by a fence and by some shrubbery which grew on and near the north line of plaintiff's property and the south line of defendant's lot. When defendant set about digging the basement for his business building the fence and shrubbery had to be removed, leaving the soil loose, so that when the concrete wall on the south side of the basement was being formed and before it hardened the cement seeped over on plaintiff's property along the lot line.

Defendant began the construction of the basement about October 10, 1926, and on November 12 plaintiff procured a restraining order forbidding him to trespass or build on plaintiff's lots, "or from building, constructing or altering any building or any part thereof." Ere this order was issued the basement walls were complete, and defendant was engaged in hewing off the projections of cement which had encroached upon and into the north edge of plaintiff's lot; and the only practical effect of the restraining order was to halt the removal of those hardened projections. About the same time plaintiff instituted a separate action against defendant for damages caused by the encroachment. Meantime defendant continued the construction of his building, and on November 23, 1926, plaintiff procured an order requiring defendant to show cause why he should not be punished for contempt. On December 1 a hearing was had thereon, and the trial court found:

"The basement wall between lots 3 and 4 was completed before this injunction order was issued and served. A part of that basement wall, under the surveys, is over on Mr. Cave's lot, but was there at the time this order was served. The brick building that has gone on top of the basement wall since the order was served, no part of it is on Mr. Cave's lot, unless it would be about seven-eighths of an inch at the west end of the building, extending up the side of the building for about six feet. That the defendant was attempting to remove the projections on the basement wall which were on the plaintiff's lot at the time he was served with this injunction order."

On this finding of fact the trial court refused to adjudge defendant guilty of contempt.

Thereafter, on December 10, plaintiff amended his petition in this case, alleging that both the basement wall and the wall of the building itself encroached on his property, and praying for a mandatory injunction requiring the removal of the alleged encroachments.

Defendant answered setting up the pendency of the action for damages; that he had built his basement wall and main wall on his own lot; that before he began their construction he had employed a surveyor to determine the correct boundary line between his lot and plaintiff's and had builded accordingly. Answering further, defendant admitted that in a few places cement had spilled or overflowed on plaintiff's lot 4, but the same could easily be chiseled off and removed, and that defendant was engaged in the work of removing it when he was halted by the restraining order. Defendant also alleged his readiness to remove the projections, and alleged that whatever cement had seeped into plaintiff's premises below the surface of the ground did not interfere with plaintiff's possession or enjoyment of the premises.

The trial court made comprehensive findings of fact, some of which read:

"(c) That before beginning said work defendant caused the line to be located by Rosenour [surveyor], and let the contract for the digging of the basement to one C. Hemker; that in digging for the south wall of the basement on defendant's lot, there was, of necessity, cave-ins and irregularities, due principally to the holes in the ground where the cement blocks in which the posts were set in plaintiff's fence were removed, and other excavations for shrubbery, which were on the line, which loosened the soil, in which places the cement, in running the foundation, extended over onto plaintiff's lot to a distance of from three (3) to sixteen (16) inches.

"(d) That in digging for the south basement wall, the defendant's contractor excavated so close to the line that there are, in places, encroachments in the foundation wall across the line on plaintiff's property, the exact nature of which is not shown by any of the evidence, but is such that the court is justified in finding that some parts of the basement wall proper are across the line, perhaps as much as three or four inches. The evidence to support this finding is not wholly satisfactory to either of the parties or the court, the condition of the wall below the surface of the ground not being ascertainable except at places where small excavations were made on plaintiff's lot to ascertain the location of the south wall, which excavations were made to a depth not greater than two feet. . . .

"(f) The encroachments, due to the irregularities in the ground, are such that can be easily removed, and were being removed by the defendant at the time he was enjoined from further trespassing upon plaintiff's lot. The encroachments in the basement wall proper cannot be removed without removing the entire basement wall, which is in the same condition now as it was when this suit was filed.

"(g) The court cannot say, as a matter of fact, under all the evidence in this case, that the defendant willfully and intentionally encroached the main part of his basement wall upon the plaintiff's property. The projections due

to the irregularities in the ground were of course intentional, but are easily removed. . . .

"(i) The actual damage sustained by the plaintiff by reason of the encroachments are comparatively small; the cost of removal of the encroachment would be very great as compared with the damages to the plaintiff.

"(j) There is no showing made by plaintiff that he is without an adequate remedy at law as against the defendant for the encroachment complained of."

Following these, the court made a conclusion of law as follows:

"The encroachment is slight. The cost of removal of the encroachment outweighs by far the benefit to be derived to plaintiff. Plaintiff is entitled to his compensation in damages, hence the mandatory injunction cannot issue, but plaintiff will be left to his remedy at law. (1 C. J. 1209; 14 A. L. R. 828, and notes there cited; *Bradley v. Crumrine,* 31 A. L. R. 1296.)"

Judgment was entered accordingly, and plaintiff appeals.

1. Plaintiff first contends that the court's finding (*g*) is inconsistent with findings (*c*) and (*d*), and in the oral argument his counsel asserted that there was no evidence to support finding (*g*). Neither contention is good. The alleged inconsistency does not appear, and there was evidence not only that the concrete projections could be removed, but that defendant was actually engaged in removing them when halted by the restraining order.

2. It is also asserted that the encroachment was not made innocently. The evidence which also included the circumstances appears to support the trial court's finding to the contrary.

3. Plaintiff cites cases, including one of our own, *Railway Co. v. Billings,* 77 Kan. 119, 93 Pac. 590, to the effect that where a person has built a wall partly projecting on the land of another, equity will compel the removal of the wall where there is no plain and adequate remedy at law for the wrong thus suffered by the other party. We would surmise that such was the rule if we had never read a book on equity; but where the interference of a court of equity would cause the encroaching defendant ruinous and needless loss and expense, and where equity's refusal to interfere would cause little or no practical inconvenience to the party sustaining the encroachment, and where all damage to the latter could be adequately compensated by a plain remedy at law, the rule is that the aggrieved party will be remanded to his action at law, and relief by mandatory injunction denied. (*Harder v. Power Co.,* 95 Kan. 315, 148 Pac. 603, and citations; *Ungrich v. Shaff,* 105 N. Y. Supp. 1013; 32 C. J. 23, 24; 14 R. C. L. 317.)

In *A. T. & S. F. Rld. Co. v. Long,* 46 Kan. 701, 27 Pac. 182, 26

A. S. R. 165 and note, the propriety of issuing a mandatory injunction to compel a railroad company to restore a flow of spring water which it had obstructed by a railway embankment was considered. This court said:

"A mandatory injunction is rarely granted. The case must be an extreme one to authorize its issue. It is universally restricted to cases where a court of law cannot grant adequate relief, or where full compensation cannot be made in damages." (p. 702.)

Under the trial court's findings, particularly (i) and (j), its conclusion of law and judgment thereon were eminently correct, and the judgment is affirmed.

HUTCHISON, J., not sitting.