No. 38,783

The Greenleaf State Bank, of Greenleaf, Kansas, a corporation, *Appellant,* v. M. F. Monteith, *Appellee.*

(252 P. 2d 621)

Opinion filed January 24, 1953.

*J. R. Hyland,* of Washington, argued the cause, and *H. N. Hyland,* of Washington, was with him on the briefs for the appellant.

*Rowland Edwards,* of Waterville, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Price, J.: This was an action by the payee of a check to recover the amount thereof, payment upon which was stopped by the defendant maker. Judgment was for defendant and plaintiff has appealed.

The facts are very simple and are summarized as follow:

On January 12, 1951, one Preston held a farm auction sale. It was on the usual basis, "Cash—No property removed until settled for." Defendant Monteith, an implement dealer and farmer at Waterville, attended the sale and bid in a calf for $134. The Greenleaf State Bank, by its cashier, Mericle, was clerk of the sale. Later that day, or perhaps the next day, defendant removed the calf to

his own farm. No money for its purchase had changed hands up to this point.

On January 29, 1951, defendant went to the Greenleaf State Bank at which time and place he had a conversation with Mr. Ayres, president of the bank. Mericle, the cashier, was out of town. The case really turns upon what was said and agreed to in the conversation between Ayres and defendant.

At the trial, which was before a jury, Ayres maintained that defendant came into the bank to settle for the calf purchased at the sale; that during the conversation defendant signed the check in question in the amount of $134, payable to plaintiff bank, and drawn on the Citizens State Bank of Waterville, left it with him, Ayres, and that nothing was discussed or agreed to between them concerning any conditional delivery of the check or that it would be returned to defendant maker in the event the proceeds of it were not necessary for the payment of a chattel mortgage held by plaintiff bank on Preston's livestock, including the calf in question.

Defendant's contention was that Preston was personally indebted to him on a past due account in excess of $134; that he intended to set off the purchase price of the calf against the indebtedness; that he knew plaintiff bank held a chattel mortgage on the livestock sold at the farm sale, including the calf; that realizing he could not obtain clear title to the calf until the bank was paid in full on its mortgage he went to the bank to ascertain if the proceeds of the sale of the remaining livestock were sufficient to satisfy the mortgage. His testimony was to the effect that Ayres, not being familiar with the details of the sale, accepted the check in question with the specific understanding that if the proceeds of the sale of the remaining livestock were sufficient to pay off the bank in full on its chattel mortgage the check would be returned to defendant uncashed, or that only so much of the proceeds of the check as would be necessary to make up any deficit would be used and that the balance would be returned to defendant. The check, which was introduced in evidence, bore the notation, "For Preston sale."

On February 8, 1951, Mericle, the cashier, and who clerked the sale, wrote defendant as follows:

"I have a letter from Mrs. Preston disclaiming that she owes you, and about the only thing I can do is cash your check you left for the purchase of the heifer. I am sorry but perhaps you can get them for the account in some other manner."

The next day the check was sent through ordinary banking

channels for collection, but in the meantime defendant had caused payment thereof to be stopped.

In connection with this whole matter it is important to note that during the trial plaintiff bank admitted that the proceeds of the sale of livestock, other than the calf, were sufficient to satisfy its chattel mortgage.

The jury was instructed that the burden was upon defendant to prove his contention that the check was delivered to plaintiff bank with the agreement that it was to be presented for payment and used subject to certain conditions.

The jury returned a general verdict for defendant and answered three special questions as follows:

"1. Did the bank accept this check subject to any conditions? Answer. Yes.

"2. If you answer the above question, 'yes,' state under what conditions the bank agreed to accept the check; (Answer fully) Answer. It is the opinion of this jury that The Greenleaf State Bank accepted Mr. Monteith's check under the conditions that it could be used to pay a mortgage on the calf, but if not needed the check was to be returned to Mr. Monteith.

"3. If you find that the check was delivered subject to any condition and such condition did not materialize, then state in what respect such condition did not materialize? Answer. The Greenleaf State Bank conceded that it did not need the money from the Monteith check to pay the mortgage."

Judgment was entered upon the verdict and answers to special questions. Plaintiff's motion for a new trial being overruled it has appealed.

Plaintiff bank's specifications of error are six in number, but will not be set out. Narrowed down, all have to do with the one controlling issue in this lawsuit, namely, the bank's contention that the testimony with reference to the alleged conditional delivery of the check was inadmissible and is violative of the rule that parol evidence is inadmissible to vary the terms of a written instrument.

In our judgment plaintiff's contentions cannot be sustained.

G. S. 1949, 52-216, provides in part:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting, or endorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument . . ."

In *Bartholomew v. Fell,* 92 Kan. 64, 139 Pac. 1016, it was held:

"Between the original parties to a written instrument the rule excluding parol evidence in contradiction of a written agreement is not infringed by proof that the instrument was never delivered, or was delivered to take effect only upon the happening of some future event." (Syl. ¶ 3.)

and in the opinion it was said:

"The plaintiff insists that the evidence offered by the defendant violates the rule that parol testimony is not admissible to contradict a written instrument. We do not understand that the evidence was offered for the purpose of contradicting the instrument itself, but only the purpose of showing that it was not in fact delivered, and, therefore, never became a binding contract." (p. 67.)

This rule has been followed in many later decisions, among them being *Rice v. Rice,* 101 Kan. 20, 165 Pac. 799; *Wilhoit v. Seavall,* 121 Kan. 239, 246 Pac. 1013, 48 A. L. R. 1273; and *Farmers State Bank v. Montgomery,* 129 Kan. 203, 282 Pac. 741.

To the same effect see 8 Am. Jur., Bills and Notes, § 1050, p. 632, where it is stated:

"The great weight of authority holds that as between the parties to a negotiable instrument, or as against subsequent parties not holders in due course, parol evidence is admissible to show that the delivery of the instrument to the payee was a conditional delivery, . . ."

(See, also, § 1056, p. 635, same volume.)

We therefore have this situation:

Plaintiff bank contends the check in question constitutes a complete contract in and of itself; that parol evidence to vary what the check purports to be, or concerning the circumstances of its delivery, is inadmissible, and that even if such evidence concerning its conditional delivery were admissible it denies there were any conditions or strings attached to the delivery. On the other hand, defendant admits the execution of the check but contends that the conditions and circumstances of its *delivery* were that it was to be cashed and the proceeds used *only* in the event the proceeds of the sale of livestock, other than the calf in question, were insufficient to pay the chattel mortgage held by the bank. Defendant further contends that the bank, having received payment in full from the proceeds of the sale of the other livestock, the condition thus provided for never came about.

Under our statute, *supra,* and the rule heretofore announced, parol evidence of the alleged conditional delivery was clearly admissible. The testimony as to this was sharply conflicting, but the jury resolved the question in favor of defendant and its findings are amply supported by the evidence.

All contentions and authorities relied upon by plaintiff have been noted. Some of the former might be material if the Prestons were parties to this action, which they are not. This action is solely between the payee and maker of the check. We do not consider the authorities cited in plaintiff's brief to be applicable to the facts of the case. We find no error in the record and the orders and judgment of the lower court are in all respects affirmed.